BRODY, ADLER & KOCH CO. v. HOCHSTADTER et al.

(Supreme Court, Appellate Division, First Department.   December 5, 1913.)

1. MORTGAGES (§ 479*)—FORECLOSURE—REFERENCE—ORDER—REQUISITES.
    In a mortgage foreclosure all parties claiming any interest in the property were duly served by publication, and, no appearance having been made, the court appointed a referee "to ascertain and compute the amount due on the bond and mortgage." The referee in fact took proof and filed his report but without the testimony, and the court rendered judgment on which the property was sold. *Held*, that the fact that the order of reference and the application for judgment did not comply with General Practice Rule 60 and Code Civ. Proc. § 1216, in that the order did not direct the referee to take proof of the facts and circumstances stated in the complaint and the proof was not presented on the application for judgment, were at most irregularities which did not affect the validity of the judgment or sale.
    [Ed. Note.—For other cases, see Mortgages; Cent. Dig. §§ 1395–1398; Dec. Dig. § 479.*]

2. MORTGAGES (§ 554*)—FORECLOSURE—REFEREE'S DEED—VALIDITY.
    The referee's deed in mortgage foreclosure proceedings is as valid as if it had been executed by the mortgagor and mortgagee, and by the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

express provisions of Code Civ. Proc. § 1632, is a bar against each party to an action "who was duly summoned."

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1582–1591; Dec. Dig. § 554.*]

3. MORTGAGES (§ 479*)—FORECLOSURE — ORDER OF REFERENCE — AMENDMENT NUNC PRO TUNC.

Where an order appointing a referee to ascertain and compute the amount due on a bond and mortgage in foreclosure omitted to require that he take proof of the facts and circumstances alleged in the complaint, as required by General Practice Rule 60, but he in fact did take such proof, it was proper for the court to amend the order of reference nunc pro tunc so as to require proof to be taken and to permit what had been taken to be filed.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1395–1398; Dec. Dig. § 479.*]

4. SPECIFIC PERFORMANCE (§ 1*)—RIGHT TO RELIEF.

Specific performance of a contract to convey land is not a remedy of right, and whether it will be granted depends on all the facts and circumstances presented in the particular case.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 1; Dec. Dig. § 1.*]

5. SPECIFIC PERFORMANCE (§ 94*)—LAND CONTRACT—RIGHT TO RELIEF.

A contract for the sale of real estate contemplated the erection of a building on the premises, for which purpose the purchaser was to obtain a building loan of $230,000 from a specified insurance company. The building was not to be erected unless he obtained the loan, and if he did not do so before January 11, 1912, the contract was to be void and the earnest money returned. Held that, it having been shown that the insurance company had refused to make the loan before the time fixed for closing the title, the court properly refused to require plaintiff to specifically perform, though it did not appear that the company refused to make the loan on or before the date specified in the contract.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 249–256; Dec. Dig. § 94.*]

6. COSTS (§ 164*)—EXTRA ALLOWANCE.

Where, in a suit by a purchaser to recover back earnest money, it appeared that the title which was thought to be unmarketable was in fact good, but it was further held that the vendor was not entitled to compel specific performance, it was error to grant plaintiff an extra allowance of costs.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 620–636; Dec. Dig. § 164.*]

7. VENDOR AND PURCHASER (§ 341*)—MERCHANTABLE TITLE—EXPENSES OF EXAMINATION.

Where a purchaser refused to perform because of a claim that the title was unmerchantable, and in a suit to recover earnest money it was held that the title was good, but that the vendors could not compel specific performance, it was error to charge them with the expenses of examining the title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1008–1017; Dec. Dig. § 341.*]

8. VENDOR AND PURCHASER (§ 335*)—CONTRACT OF SALE—NONPERFORMANCE—RECOVERY OF EARNEST MONEY.

Where a contract for the sale of real estate contemplated the construction of a building by the purchaser, and provided that if an insurance company refused to make a building loan on or before January 11, 1912, the contract should be void and the earnest money returned, proof

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the insurance company refused to make the loan on or before February 1, 1912, before the date fixed for closing, was insufficient to entitle the purchaser to recover the earnest money.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 981–983; Dec. Dig. § 335.*]

Appeal from Trial Term, New York County.

Action by the Brody, Adler & Koch Company against Bella W. Hochstadter and another. From a judgment for plaintiff and from an order denying a new trial, defendants appeal. Judgment in so far as it dismissed defendants' counterclaim affirmed without costs, and judgment and order denying motion for new trial otherwise reversed, and new trial ordered.

See, also, 150 App. Div. 530, 135 N. Y. Supp. 549.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Morgan J. O'Brien, of New York City (Henry M. Bellinger, Jr., of New York City, on the brief), for appellants.

Lewis M. Isaacs, of New York City, for respondent.

McLAUGHLIN, J. On the 18th of December, 1911, the parties entered into a written contract by which the plaintiff agreed to purchase, and the defendants to sell, for $185,000, certain real estate in the city of New York. At the time the contract was executed, $5,000 of the purchase money was paid; $5,000 agreed to be paid when the deed was delivered; $110,000 by taking the property subject to a mortgage for that amount then thereon; and the balance by the vendee giving back a purchase-money mortgage for $65,000, payable on the 1st day of February, 1916, or sooner, at the option of the holder if the purchaser did not, within four months after title passed, commence the erection of a 12-story loft building upon the premises. The contract further provided that if the Metropolitan Life Insurance Company, on or before the 11th of January, 1912, refused to make a building loan to the purchaser for $235,000, then the contract was to be "null and void" and the $5,000 paid should be returned. Four days later the contract was modified by reducing the amount to $230,000, and increasing the purchase money mortgage to $70,000.

At the time fixed for closing the contract, February 1, 1912, defendants tendered a deed, which the plaintiff refused to accept, on the ground that the title was not marketable and the Metropolitan Life Insurance Company, some time prior thereto—just when does not appear—refused, for the same reason, to make any loan.

This action was subsequently brought to recover the $5,000 paid at the time the contract was executed and expenses incurred in examining the title; the theory of the recovery being that it was not marketable. The answer put in issue the allegations of the complaint in regard to the defect in the title and alleged, affirmatively, it was marketable, and as a counterclaim asked that plaintiff be directed to specifically perform the contract. The issues raised by the counterclaim and reply were, by direction of this court (Brody, Adler & Koch Co. v. Hoch-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stadter, 150 App. Div. 527, 135 N. Y. Supp. 550), first tried at Special Term and a decision rendered in favor of the plaintiff dismissing the counterclaim, with an extra allowance of costs. Thereafter the plaintiff's right to recover the $5,000 paid when the contract was executed, and its expenses in examining the title, was brought on for trial at a trial term, and a verdict directed for the amount claimed, and from the judgment entered thereon defendants appeal.

The defendants' title is based upon a sale under the foreclosure of a mortgage. The defendant Kratzenstein and defendant Hochstadter's deceased husband held a mortgage upon the premises and in April, 1908, commenced an action to foreclose it. That action was prosecuted to and resulted in a judgment of foreclosure and sale, and they became the purchasers. Defendant Hochstadter has since succeeded to her husband's interest. Among the defendants in that action were one Walters and wife, who were the owners of record of an undivided one-fourth interest in the premises. They were both duly served by publication, but did not appear in the action. No issue having been raised by any of the defendants, a referee was appointed "to ascertain and compute the amount due on the bond and mortgage." He took the proof and thereafter filed a report, but without the testimony taken, merely stating in the report that he had "computed and ascertained the amount due to the plaintiffs," which he found to be $94,-734.41. The report was duly confirmed, a sale directed, the plaintiffs bid in the property, and accepted the referee's deed.

[1] The contention is and has been that the title is unmarketable because of defects in the foreclosure proceedings, in that the order of reference and the application for judgment did not comply with rule 60 of the General Rules of Practice and section 1216 of the Code of Civil Procedure, because the order did not direct the referee to take proof of the facts and circumstances stated in the complaint, and, when the application was made for judgment, such proof was not presented; in other words, it is claimed that the defects referred to rendered the judgment, so far as the Walters were concerned, absolutely void. The claim has nothing to sustain it. The summons was properly served upon them. The court therefore had jurisdiction of the person and of the subject-matter. The judgment and the sale made in pursuance of it were conclusive and binding upon them. The defects referred to were, at most, irregularities which in no way affected the jurisdiction of the court or its judgment. The judgment being valid, the sale made in pursuance thereof gave good title to the purchaser. Parish v. Parish, 175 N. Y. 181, 67 N. E. 298; Sproule v. Davies, 171 N. Y. 277, 63 N. E. 1106; Corbin v. Baker, 167 N. Y. 128, 60 N. E. 332; Lauder v. Meserole, 148 App. Div. 739, 133 N. Y. Supp. 340; Ames v. Danzilo, 158 App. Div. 232, 143 N. Y. Supp. 75.

[2] The referee's deed is as valid as if it had been executed by the mortgagor and mortgagee, and by express provision of the statute it is a bar against each party to the action "who was duly summoned." Code of Civil Procedure, § 1632. The fact is not disputed that the Walters were "duly summoned." The judgment therefore, notwithstanding the irregularities referred to, completely extinguished their

title, and if aggrieved their remedy is confined to the proceeds of the sale.

[3] The referee did, in fact, take proof as to the facts set forth in the complaint. He did, in this respect, comply with both the section of the Code and the rule referred to, notwithstanding the defect in the order appointing him. It was proper therefore for the court to amend the order of reference by requiring the proof to be taken and permitting what had been taken to be filed. This was done by an order nunc pro tunc prior to the day fixed for closing the title, so that on that day there was no defect whatever in the foreclosure proceedings. The irregularities theretofore existing had been cured.

If the foregoing views be correct, then it follows that the title is good and the plaintiff was not justified in refusing to accept the same on that ground.

[4] Notwithstanding the title was good, I am of the opinion that the court properly refused to direct the plaintiff to specifically perform. Whether a party will be directed to specifically perform a contract must in each case be determined from all the facts and circumstances presented. A court of equity will not exercise its powers in directing specific performance unless satisfied that justice requires it.

[5] In the present case, the contract, as we have seen, provided for the erection of a 12-story loft building upon the premises, for which purpose the plaintiff was to obtain a building loan of $230,000. It is perfectly evident from the terms of the contract that the obtaining of this loan for the construction of the building was an inducing cause to the plaintiff to enter into it. The building was not to be erected unless he obtained the loan, and if he did not do so on or before January 11, 1912, then the contract was to be null and void and the money which had been paid, returned. It does not appear whether the insurance company refused to make the loan on or before the date specified, but it does appear that it refused before the time fixed for closing. The court therefore might very properly take that fact into consideration and say, even though the title were good, that specific performance ought not to be decreed. I am of the opinion therefore that the court, even though the defendant offered at the conclusion of the trial to relieve the plaintiff from the obligation to construct the building, was right in refusing to direct plaintiff to specifically perform, and for that reason the counterclaim was properly dismissed.

[6, 7] But, under the circumstances, an extra allowance of $2,000 costs ought not to have been granted or the defendants compelled to pay expenses incurred in examining the title.

[8] But one other question remains to be considered, and that is whether the court was right in directing a verdict in favor of the plaintiff for the amount paid at the time the contract was executed. The title tendered, as we have seen, was good. Whatever rights the plaintiff has in this respect must be determined from the contract itself. The contract provided that if the insurance company refused to make the loan on or before the 11th of January, 1912, then "and in that case this agreement shall be null and void and the $5,000 paid on the execution of this contract shall be returned to the purchaser." The record

does not show that the insurance company refused to make the loan on or before the date named. There is a complete failure of proof in this respect. All that appears on this branch of the case is that they refused to make the loan on or before the 1st of February, 1912. Plaintiff therefore, by express provision of the contract, was not entitled to recover unless it proved what the contract provided, viz., that the insurance company refused to make the loan on or before January 11th. It is possible that this proof can be supplied, and for that reason a new trial should be ordered.

The judgment, in so far as it dismissed the counterclaim, is affirmed, without costs to either party, and the balance of the judgment and order denying a motion for a new trial is reversed and a new trial ordered, with costs to appellants to abide event. All concur.

